INTERNATIONAL & G. N. R. CO. et al. v.
DAVISON.

(Court of Civil Appeals of Texas. Austin.
May 31, 1911. Rehearing Denied
June 28, 1911.)

1. WATERS AND WATER COURSES (§ 179*)—
CONSTRUCTION OF RAILROAD—JURY QUES-
TION.

In an action against a railroad company
for so constructing its track that water from
an overflowing river injured plaintiff's land,
the evidence being conflicting, the question of
liability was one for the jury.

[Ed. Note.—For other cases, see Waters and
Water Courses, Dec. Dig. § 179.*]

2. WATERS AND WATER COURSES (§ 179*)—
FLOODING LANDS—ACTIONS—EVIDENCE.

In an action against a railroad company
for so constructing its track that water from
an overflowing river flowed over and injured
plaintiff's land, the testimony of witnesses, pos-
sessing an intimate knowledge of the river as
to the effect of previous floods upon the same
land before the construction of the railroad,
was admissible.

[Ed. Note.—For other cases, see Waters and
Water Courses, Dec. Dig. § 179.*]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS
ERROR.

Where evidence of a certain character was
admitted without objection, the admission of
other evidence of the same character is not
erroneous.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4153–4160; Dec. Dig. §
1050.*]

4. TRIAL (§ 129*)—ARGUMENT—INVITED ER-
ROR.

Where defendant's attorney told the jury
that plaintiff's attorney would not have brought
the action had he known the facts, and gave
his personal convictions as to the case, the ar-
gument of plaintiff's attorney wherein he stated
his personal conviction did not constitute re-
versible error, having been provoked by im-
proper argument from the other side.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 310; Dec. Dig. § 129.*]

5. TRIAL (§ 121*)—ARGUMENT—SCOPE.

Where certain evidence was brought out by
counsel for the defendant on cross-examina-
tion, it was before the jury, and plaintiff's at-
torney could comment thereon.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 294–298; Dec. Dig. § 121.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

6. TRIAL (§ 133*)—ARGUMENT OF COUNSEL.

Where the court instructed the jury to disregard the argument by an attorney, it will though erroneous, be considered harmless, it being presumed that the jury will obey the instruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

Action by S. D. Davison against the International & Great Northern Railroad Company and another. From a judgment for plaintiff, defendants appeal. Affirmed.

John M. King and Baker & Baker, for appellants. Z. I. Harlan, for appellee.

RICE, J. This suit was brought by appellee against the International & Great Northern Railroad Company, and also against T. J. Freeman, receiver of said company, to recover damages alleged to have been sustained by him to his land and crops during the year 1908, occasioned by an overflow of the Brazos river, on account of the alleged negligent construction of said railway. Appellee owned a tract consisting of 400 acres of land just south of Highbank (a station on said railroad) lying in the Brazos bottom, on the east side of and adjoining said river, through the southeast corner of which the railway of appellant extended, leaving 35 acres on the east side of the railway and the balance on the west side, between the railway and the river. The river at this point ran in a southeasterly direction, and the railway generally in a southerly direction, nearly parallel with the river. Highbank was about a mile and a half from the river, and the railway and the river going south converged until the distance between them at appellee's south line is something like 800 to 1,000 feet; whereas, at appellee's north line the distance is something like a mile. Prior to the construction of the railway through the bottom there had been previous overflows of the Brazos river, the overflow waters at this point running in an easterly direction until they would strike the foothills, and thence discharge themselves into Big creek and the Little Brazos, spreading out over the bottom across plaintiff's farm. It was shown that these overflows did not wash the land; but, on the contrary, left deposits thereon, rendering the land more fertile.

The railway was laid on a solid earthen embankment through the bottom, from three to six feet high, and from Highbank to about the south line of plaintiff's premises no openings or culverts were made or left therein for the proper drainage of the land. During the spring of 1908 there were two overflows, the first occurring in April, and the latter, upon which this suit is predicated, on the 29th day of May, at which time plaintiff's land was in a high state of cultivation,

planted to corn and cotton. It appears from the evidence that as the river overflowed the water was held and impounded on the west side of plaintiff's land by the railway embankment, gradually rising, covering the entire west side of the farm, and finally, during the second day of the flood, breaking the embankment and extending over onto the east side. During these two days the water was much higher on the west than it was on the east side, and on the west side there was a swift current down the railway towards the river.

It was the theory of plaintiff that as the water came from the river and was impounded by the embankment, a swift current was created, which caused the land on the west side to scour and wash out in holes. The evidence on the part of plaintiff sustains this contention; it appearing that the soil had been entirely washed off to hardpan, leaving many large holes over the farm, totally destroying the crops except in very high places. There was evidence, however, on the part of defendant, to the effect that the land and crops would have been thus injured irrespective of the existence of the railway.

Appellant pleaded the general issue, and specially that plaintiff's land was low, level, and flat, subject to overflow, and that the water would cover the west side thereof during an overflow before it would reach the railway, and would have been so covered and his crops destroyed if the railroad had never been built. And, further, that the crop was partly destroyed by boll weevils, for which defendant was not liable; and, further, that the overflow was unprecedented, higher than ever known before.

There was a jury trial, resulting in a verdict and judgment for plaintiff for $1,541 damages to land, and in favor of appellant with reference to the crops, from which judgment this appeal is prosecuted.

[1] The first two errors assigned complain of the refusal of the court to give a peremptory instruction in behalf of appellant on the ground, as it contends, that the undisputed evidence showed that the water would have attained a depth of from four to six feet all over plaintiff's land before it reached any part of defendant's roadbed, and that in the condition the soil was in at the time on plaintiff's farm, that the current from this water would scour plaintiff's land, as he claimed it was scoured, if the railroad had never been built. This theory was supported by the testimony of the engineers introduced by appellant. But, on the other hand, the testimony on the part of appellee showed that prior to the construction of the railroad there was an overflow in 1899, during which time the water got as high or higher than in the 1908 overflow; that instead of washing out the land and scouring

it off, as was done in the present instance, the waters left a deposit, building up and enriching it. And the testimony of these engineers was based upon their investigations made on the premises some eighteen months after the overflow; while plaintiff showed by several witnesses who went across these farms in boats during the overflow, that there was a swift current formed over the entire west side of plaintiff's tract before the railroad embankment was broken, whereby the water was forced to run swiftly over and across said farm through the narrow gorge thus formed between the river and the railway.

The issue thus raised was resolved by the jury, under an appropriate instruction, in favor of appellee. And the evidence being contradictory on this issue, it would have been improper for the court to have given the special charge requested, for which reason the assignments presenting this question are overruled. Railway v. Hadnot, 67 Tex. 506, 4 S. W. 138; Railway v. Haskell, 4 Tex. Civ. App. 555, 23 S. W. 546; Railway v. Bohan, 47 S. W. 1052, 1053; Hahl v. Immigration Ass'n, 116 S. W. 836; M., K. & T. Ry. Co. v. Howell, 126 S. W. 900; Railway Co. v. Gillespie, 48 Tex. Civ. App. 56, 106 S. W. 711.

[2] By the third and fourth assignments it is insisted that the court erred in permitting the plaintiff and the witness M. W. Cabaness to testify that the overflows previous to 1908 left deposits upon the land in question. This was objected to on the ground that it was not shown that similar conditions existed during said previous overflows to the one under consideration; citing in support of his contention Green v. Railway, 79 Tex. 608, 15 S. W. 685; Railway v. Locker, 78 Tex. 279, 14 S. W. 611; Railway v. Kiersey, 101 Tex. 513, 109 S. W. 862; Bells v. Railway, 36 Tex. Civ. App. 569, 82 S. W. 1073. It is apparent that the rule contended for in those cases ought not to apply, for the reason that in them comparisons were instituted with reference to the effect and action of the water upon different tracts than the one under consideration, without showing similar conditions; whereas, here, the identical tract of land is made the basis for the comparison for the purpose of showing the different effects of the water upon it during overflows, both before and after the construction of the railroad embankment; and similar conditions were shown to exist during both overflows—that is to say, the water came from the same source, and the land was in the same state of cultivation, having undergone no change in surface conditions; and, in addition, each of said witnesses was shown to have possessed an intimate knowledge of the river and its various overflows since 1885. See G., C. & S. F. Ry. Co. v. Harbson, 88 S. W. 455, in which the holding was affirmed by the Supreme Court (99 Tex. 537, 90 S. W. 1097); I. & G.

N. R. R. Co. v. Foster, 45 Tex. Civ. App. 334, 100 S. W. 1017.

[3] But even if the admission of this testimony was error, which is not conceded, it would not be ground of reversal, for the reason that the witness Cluck testified to the same facts without objection on the part of appellant. M., K. & T. Ry. Co. v. Kennedy, 51 Tex. Civ. App. 466, 112 S. W. 345; Chicago, R. I. & T. Ry. Co. v. Porterfield, 92 Tex. 443, 49 S. W. 361; M., K. & T. Ry. Co. v. Williams, 117 S. W. 1049.

[4] The fifth and sixth assignments complain of the refusal of the court to grant a new trial on the ground that in his closing argument counsel for plaintiff, in effect, told the jury what he believed with reference to the plaintiff's right to recover, and gave his individual convictions of the case, based upon personal inspection of the land in question. After a careful inspection of the record we are inclined to believe that if these remarks were not justified by the argument of counsel for the defendant, they were at least provoked thereby, and what was said by Mr. Harlan, plaintiff's attorney, as shown from the explanation of the trial judge to the bill of exceptions, was in the nature of a reply to the argument of counsel for the defendant, who had likewise given his opinion of the case, based upon his individual inspection of the premises in question, and who had told the jury that counsel for plaintiff would never have brought this suit, if he had known the facts. The rule seems to be that a reversal will not be had where an improper argument is provoked by counsel for the opposite side, who has used language equally as objectionable as that of which he complains; and especially where the argument is in response to something that was called forth by the party provoking it. Heidenheimer v. Thomas, 63 Tex. 287; I. & G. N. R. R. v. Goswick, 83 S. W. 423; Western Union Tel. Co. v. Sloss, 45 Tex. Civ. App. 153, 100 S. W. 356.

[5] Nor do we think there was any reversible error shown on account of the comment by counsel for plaintiff on the testimony of John W. Stewart with reference to the fact that the railway company had compromised his claims. This evidence was brought out on cross-examination of said Stewart by counsel for appellant, and was before the jury at the time the remarks were made, and therefore, the discussion thereof was permissible. See G., C. & S. F. Ry. Co. v. Brown, 16 Tex. Civ. App. 93, 40 S. W. 613; H. & T. C. R. R. Co. v. Cheatham, 52 Tex. Civ. App. 1, 113 S. W. 779, 780.

[6] After this, however, the court instructed the jury not to consider said remarks. It will be presumed that they obeyed such instructions, and that no injury was done thereby. See Hogan v. M., K. & T. Ry. Co., 88 Tex. 685, 32 S. W. 1035; I. & G. N. R. R. Co. v. Aleman, 52 Tex. Civ. App. 565, 115 S. W. 74; H. & T. C. Ry. Co. v. Davis, 45

Tex. Civ. App. 212; 100 S. W. 1015; S. A. & A. P. Ry. Co. v. Keirsey, 106 S. W. 164. For which reasons the assignment complaining of this question is overruled.

It is urged .that the verdict of the jury is excessive. We have carefully examined the record, and are not prepared to agree with counsel for appellant in this contention. We believe the evidence was ample to sustain the verdict rendered.

The remaining assignments have been duly considered and are not regarded as well taken. Finding no error in the proceedings of the trial court, its judgment is in all respects affirmed.

Affirmed.